UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA WARITH, | ) | CASE NO.1:10CV2098 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| GREATER CLEVELAND REGIONAL | ) | OPINION AND ORDER |
| TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>CHRISTOPHER A. BOYKO, J:</u>

This matter comes before the Court upon Defendant Greater Cleveland Regional Transit Authority's ("RTA") Motion for Summary Judgment on Plaintiff's Complaint. For the following reasons, the Court grants Defendant RTA's Motion for Summary Judgment on Plaintiff's federal and state employment discrimination claims and declines to exercise its supplemental jurisdiction over Plaintiff's remaining state claims.

### I. FACTS

#### A. Factual Background

Plaintiff Laura Warith ("Plaintiff") is a resident of the City of Cleveland and a former

1

employee of Defendant RTA. Pl.'s Compl. ¶¶ 4, 11, ECF No. 1. Plaintiff is also a member of Defendant Amalgamated Transit Union, Local 268 ("Union"). *Id.* at ¶ 8.

In September 2009, citing budgetary constraints, RTA eliminated its Community Circulator service. Def.'s Mot. for Summ. J. 2, ECF No. 13. Unfortunately for Plaintiff, she was working as a full-time Circulator Operator at the time RTA decided to discontinue its Community Circulator service. Pl.'s Compl. ¶ 11, ECF No. 1. Consequently, Plaintiff, like all other Circulator Operators, was laid off. Def.'s Mot. for Summ. J. 2, ECF No. 13.

### B. Procedural Posture

Plaintiff's first claim is that she was discriminated against on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Pl.'s Compl. ¶ 19, ECF No. 1. Plaintiff claims that RTA did not follow the layoff procedure that Union bargained for in the collective bargaining agreement governing the parties. *Id.* at ¶¶ 11-14. Rather, Plaintiff claims that "two Caucasian employees were instead placed in full-time positions in other departments, thus retaining their employment with Defendant, while African-American employees, including Plaintiff, who had more seniority, were terminated from their employment." *Id.* at ¶ 13.

Plaintiff has three additional state law claims: Violation of Ohio Rev. Code § 4112.02 (Ohio's statutory provision paralleling Title VII), Breach of Contract/Promissory Estoppel, and Breach of Duty of Fair Representation. *Id.* at ¶¶ 28, 32-42, 44-47.

RTA has filed a motion for summary judgment claiming that "[t]he undisputed facts show that Plaintiff's layoff was handled in a race-neutral manner, according to the predetermined framework of the collective bargaining agreement and merit system rules. Plaintiff had the exact same opportunity as every other Circulator Operator. . . ." Def.'s Mot. for Summ. J. 6, ECF No. 13.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 (D.C. Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if

the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

#### 1. Plaintiff's Title VII Claim

To establish a prima facie case for race-based discrimination in violation of Title VII, a plaintiff must show: "(1) that [s]he is a member of a protected class; (2) that [s]he suffered an adverse employment action; (3) that [s]he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than [s]he."  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

RTA assumes *arguendo* that Plaintiff satisfies the first three elements of a prima facie case. Def.'s Mot. for Summ. J. 8, ECF No. 13.  However, Defendant correctly refutes Plaintiff's claim that "a similarly-situated employee outside the protected class or classes was treated more favorably than [s]he."

According to the "[RTA] Reduction in Force as of September 20, 2009" Circulator Operator seniority list (which both parties rely on in their motions), sixty-four Circulator Operators were affected by RTA's termination of its Community Circulator service.  *See* Def.'s Ex. A6, ECF No. 13-1; Pl.'s Ex. A, ECF No. 23-1.  Of these sixty-four individuals, five are Caucasian, three are

Hispanic, and fifty-six are African-American. *See id.* As stated above, the crux of Plaintiff's Complaint is that "two[1] Caucasian employees were instead placed in full-time positions in other departments, thus retaining their employment with Defendant, while African-American employees, including Plaintiff, who had more seniority, were terminated from their employment." Pl.'s Compl. ¶ 13, ECF No. 1. However, these two employees are not similarly situated to Plaintiff.

The first employee, Kathlyn Gatens ("Gatens") chose to move to her former full-time position and "bump back" the incumbent, who had less seniority than Gatens. *See* Def.'s Ex. A6, ECF No. 13-1; Pl.'s Ex. A, ECF No. 23-1. Such an option was made available to *all* Circulator Operators.[2] Fields Aff. ¶ 10. However, as Plaintiff had no former full-time job with RTA, this option was not available to her. *Id.* at ¶ 17. Accordingly, Plaintiff was not similarly situated to

---

[1] The Court notes that in her Motion in Opposition to Summary Judgment, Plaintiff argues that *three* Caucasian employees were transferred and afforded full-time positions ahead of her. Pl.'s Mot. in Opp'n to Summ. J. 10, ECF No. 23. However, not even Plaintiff herself can support that contention, and the seniority list on which both parties rely also clearly and definitively states that only *two* Caucasian employees remained with RTA after RTA's termination of its Community Circulator service. *See* Def.'s Ex. A6, ECF No. 13-1; Pl.'s Ex. A, ECF No. 23-1.

[2] In accordance with the collective bargaining agreement and merit system rules, Circulator Operators were apprised of the following options in the face of the lay offs:

[1] Circulator Operators who previously held other full-time union positions at [RTA] could transfer to that former position if held by an incumbent with less seniority ("bump back");

[2] Circulator Operators who formerly held part-time positions could elect a demotion to the same part-time position if it was vacant; [or]

[3] Circulator Operators could apply and test for any posted positions.

Fields Aff. ¶ 10.

Gatens.

Plaintiff was likewise not similarly situated to the second employee, Brian Kemer ("Kemer"). Kemer "was on Dispatcher 577 eligible list before [the] reduction in force occurred." Def.'s Ex. A6, ECF No. 13-1; Pl.'s Ex. A, ECF No. 23-1. Again, such an option was made available to *all* Circulator Operators. Fields Aff. ¶ 10. However, as Plaintiff did not apply for and test for any posted positions, nor was she on any eligible lists before the reduction in force occurred (unlike Kemer, who was), she was not similarly situated to Kemer.

Because neither Gatens nor Kemer are similarly situated to Plaintiff, Plaintiff has failed to show that "a similarly-situated employee outside the protected class or classes was treated more favorably than [s]he." Accordingly, Plaintiff's Title VII claim for race-based discrimination must fail, and summary judgment is granted on this claim. *See Celotex*, 477 U.S. at 323.

Both Sixth Circuit and Ohio Supreme Court precedent hold that race discrimination claims, brought under Title VII and Ohio Revised Code Section § 4112, are analyzed the same. Therefore, summary judgment on Plaintiff's race discrimination claim under federal law requires a similar conclusion under Ohio law and the Court grants summary judgment for RTA on Plaintiff's race discrimination claim brought under § 4112. *See, e.g., Cincinnati Bar Ass'n. v. Young,* 89 Ohio St.3d 306, 731 N.E.2d 631, 639 (2000) (stating that it is the practice of the Ohio courts, "where appropriate, to refer to federal case law interpreting Title VII" when analyzing discrimination claims brought under O.R.C. § 4112) and *Myers v. Cuyahoga County, Ohio* 182 Fed.Appx. 510, 517, 2006 WL 1479081, 4 ( 6th Cir. 2006).

**2. Plaintiff's Remaining State Law Claims**

Because Plaintiff's Title VII claim fails and it was the only claim giving the Court original jurisdiction to hear this matter, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims.

### III. CONCLUSION

Plaintiff has failed to satisfy an essential element of her Title VII and O.R.C. §4112 claims for race-based discrimination–namely, that "a similarly-situated employee outside the protected class or classes was treated more favorably than [s]he." Consequently, *Celotex* dictates that RTA's motion for summary judgment must be granted. Additionally, because Plaintiff's Title VII claim was the only basis giving the Court original jurisdiction in this matter, the Court declines to hear the remaining state law claims. Accordingly, Defendant RTA's Motion for Summary Judgment on Plaintiff's race discrimination claims is GRANTED and Plaintiff's remaining state law claims are DISMISSED without prejudice.

    IT IS SO ORDERED.


Date: May 1, 2012          s/Christopher A. Boyko
                                  CHRISTOPHER A. BOYKO
                                  United States District Judge